UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO:

**LAVINIA SASU-PILTZ**,
 Plaintiff,

v.

**RIC L. BRADSHAW**, in his official capacity as Sheriff of Palm Beach County,
 Defendant.
_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
**(Demand for Jury Trial)**

Plaintiff, Lavinia Sasu-Piltz, by counsel, brings this action against the Defendant, Ric L. Bradshaw, in his official capacity as Sheriff of Palm Beach County, and for her Complaint, alleges as follows:

**PARTIES**

1. Plaintiff, Lavinia Sasu-Piltz, is an individual who resides in Palm Beach County, Florida and was employed by the Palm Beach County Sheriff's Office from November 12, 2002, through present.

2. Defendant, Ric L. Bradshaw, is the duly elected Sheriff of Palm Beach County, Florida and is sued in his official capacity as the head of the Palm Beach County Sheriff's Office.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

4. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in Palm Beach County, Florida which is within the Southern District of Florida.

## FACTUAL ALLEGATIONS

**Background and Employment History**

6. Plaintiff began employment with the Palm Beach County Sheriff's Office ("PBSO") on November 12, 2002 as an HR Analyst.

7. Plaintiff holds a Bachelor of Business Administration degree with a dual major in Economics and Finance from Bernard M. Baruch College, City University of New York, awarded in 1993.

8. In 2006, Plaintiff was reclassified from HR Analyst to Unit Manager in Human Resources and received an 11% increase, and served as project lead on Oracle system implementation.

9. In 2009, Plaintiff was transferred to the Information Technology Department and reclassified to Functional Systems Specialist (pay grade 400), where she served as Oracle System Administrator for the entire agency for 15 years.

10. In mid-2019, Plaintiff was transferred back to Human Resources, maintaining her Functional Systems Specialist position and role.

11. Throughout her 22+ year career with PBSO, Plaintiff received numerous commendations and awards, including Good Conduct Medals for 5, 10, and 20 years of service,

Honorable Service Medals, and a Sheriff's Special Commendation in 2023 for exemplary performance.

**Management Changes and Escalating Issues**

12. In April 2021, Plaintiff began reporting to Division Manager, Diane Malcolm, after her previous supervisor was promoted.

13. Beginning in January 2023, Plaintiff was assigned additional full-time roles without prior discussion, training, or compensation adjustment, including: (a) JDXpert System Administrator and Project Lead role previously held by QA Manager Sheri McCants-Hubers; and (b) HR Analyst backup role due to staff shortages.

14. These additional assignments created conflicting duties with Plaintiff's primary Oracle System Administrator role, which served the entire agency and required immediate attention to system maintenance, issues, and user support.

**Discriminatory Office Assignments and Workspace Arrangements**

15. On May 10, 2023, after 17 years in an office environment, Plaintiff was forced to relocate from her private office to a cubicle across from a high-traffic copier/scanner room.

16. This relocation was part of a systematic pattern of discriminatory treatment based on ethnicity. The evidence establishes that the other recently promoted managers of different ethnic background started out in HR Specialist positions about 7 years ago are now promoted into Unit Manager and Division Manager positions with corner offices.

17. Specifically, there are currently 4 managers in HR, all of them started about 7 years ago as HR Specialists. They are now managers assigned to offices 2 of them Unit Managers and one of them Division Manager. They do not have any more professional experience or

years of service or certifications than Lavinia or Sheri. But they are of a different ethnical background that seems to be a pattern in promotions and new hires.

18. QA Manager Sheri McCants-Hubers, who shares Plaintiff's ethnic background and has almost 43 years with PBSO both in HR and IT, was similarly "kicked out of our offices" and placed in cubicles despite her extensive experience and management role.

19. Both Plaintiff and McCants-Hubers were humiliated and placed in cubicles the same as the HR Analysts and the HR Specialists while managers of different ethnic backgrounds retained corner offices.

**Discriminatory Promotion and Reclassification Practices**

20. Plaintiff's career advancement was systematically blocked and reclassified from management to non-management positions despite her superior qualifications. In 2006, Major Veccia, had promised another promotion to Section Manager PG 450CE (curr 490CE) once the Oracle implementation project was completed. However, a reorg occurred around the project completion. Instead of being promoted, Plaintiff was involuntarily transferred out by the new management.

21. Plaintiff remained stagnant in the same pay grade for over a decade, having topped out in PG 400 (curr 440) in 2013 and other similarly situated employees were upwardly reclassified or promoted. Plaintiff also had not received any merit increases for past 11 years.

22. The discriminatory pattern is evidenced by PBSO's dual advancement system where employees can advance through either promotions, where you apply to a vacancy and compete for the position" through "a formal process such as testing, interview, etc., or

reclassifications, where you don't apply to a vacancy and there is no applicant pool, you are basically reclassified to a higher position or pay grade or both at management discretion or approved by the Sheriff. These reclassifications tend to be more prevalent and geared towards preferential treatment as there is no competition for position and there is also no limit as to the % increases or career levels.

23. Meanwhile, employees of different ethnic backgrounds received rapid advancements despite significantly less experience and qualifications:

    - Latasha Henzie: Hired as HR Specialist PG 200 in February 2018, reclassified from HR Specialist to Unit Manager PG 390CE in August 2019 (57% increase), reclassified to Section Manager 450CE in July 2021 (19% increase), and promoted to Division Manager PG E-CL in January 2024 (25% increase) - achieving multiple advancements in just 7 years.

    - Jennifer Matthews: Hired as HR Specialist PG 200 in February 2016, received 2 reclassifications and one promotion over 9 years, reaching Unit Manager PG 430CE in April 2023 (21% increase).

    - Stephanie Michel: Hired as HR Specialist PG 200 in July 2018, achieved Unit Manager status in just 7 years with a 32.0% salary increase in her final promotion to Unit Manager PG 430CE in January 2024.

24. The discriminatory pattern is further evidenced by comparing Plaintiff's reclassification history with that of other employees. While Plaintiff received only an 11% increase when reclassified from HR Analyst to Unit Manager in 2006, and QA Manager Sheri McCants-Hubers received a 10% increase when reclassified from HR Analyst to Unit Manager in

2008, Latasha Henzie received a 57% increase for the same type of reclassification from HR Specialist to Unit Manager in 2019, demonstrating disparate treatment based on ethnicity.

25. The pattern of discriminatory promotions is evident in the ethnic composition analysis showing that there are 22 staff in HR. There are 7 White, 3 Hispanic, 10 Black, 1 Indian/Asian, 1 Two or more races. So, 45% Black, 31% White, 13% Hispanic, 4% Asian, 4% Two or more races.

**Hostile Work Environment and Systematic Harassment**

26. Management subjected Plaintiff to unprecedented micromanagement, including requiring daily work logs in spreadsheets and weekly productivity reports that were not required of other employees.

27. Plaintiff was subjected to specific examples of petty harassment through emails criticizing minor formatting issues. On September 8, 2023, Division Manager Malcolm sent an email stating "The information is correct. However, I'm defining 'Format' to include font, font size, font color, indentations etc. Your notice does not have the same format as what the Class & Comp unit has been using for years."

28. Management created impossible workload demands by consolidating three full-time positions into Plaintiff's role: Oracle System Administrator, JDXpert System Administrator and Project Lead, and HR Analyst duties. Making it humanly impossible for Plaintiff to keep up with the workloads, projects, deadlines and priorities.

29. Management created contradictory documentation demands, such as questioning "Where is the Oracle Issues log?" on October 2, 2023, then criticizing that "the log is to be updated as issues and changes occur" when Plaintiff provided the location.

30. The harassment was systematic and designed to create documentation for termination, and escalated further after the submission of Union grievance and IA complaint, management was trying to now document Plaintiff's case against her that didn't exist before by sending all these emails to her to set her up.

**Job Reclassification and Retaliation Timeline**

31. On July 13, 2023, the day before Plaintiff's scheduled vacation, she was informed of a proposed reclassification from Functional Systems Specialist to HR Systems Analyst.

32. This reclassification inappropriately consolidated three full-time positions into one: (a) Oracle System Administrator; (b) JDXpert System Administrator and Project Lead; and (c) HR Analyst role.

33. On July 27, 2023, Plaintiff submitted a formal memo requesting reevaluation of her position, noting that the reclassification did not reflect her expanded role, background, experience, or skills. This constituted protected activity opposing discriminatory employment practices.

34. On August 11, 2023, just 15 days after Plaintiff's formal position evaluation request, management held a meeting where they denied her request and, for the first time in her 20+ year career, accused her of performance and productivity issues without any supporting documentation.

35. During this same meeting, Plaintiff was presented with an Employee Assistance Program (EAP) form and forced to sign it under duress, writing "refuse to sign" on the document.

**Hostile Confrontation with Specific Management Statements**

36. On August 17, 2023, just 6 days after the EAP meeting, Plaintiff was called to an unscheduled meeting with Bureau Director Karen Thomas, Division Manager Malcolm, and Executive Secretary Michelle Hagopian.

37. When Plaintiff requested union representation due to the presence of multiple management personnel, Bureau Director Thomas stated "Lavinia, I am not asking you to sit down now, I am telling you to sit down."

38. When Plaintiff continued to refuse without union representation, Thomas started yelling at her and told her to sit down. Thomas accused Plaintiff of insubordination for sending a text message to Department Director Hilda Gonzalez, the Plaintiff's next level manager, and previous supervisor.

39. When Plaintiff attempted to leave to call her union representative, all three management personnel chased her down the office hallway in front of other employees and confronted her at her cubicle.

40. At Plaintiff's cubicle, Thomas "came into my cubicle" while "DM Malcolm and Michelle were just outside my cubicle." Thomas "started to put the paper into my face" and was "yelling at me 'Did you send this to her, just answer yes or no'. Again, 'did you send this to her, just answer, yes or no'." The Plaintiff repeatedly asked Thomas to stop as it was making her sick.

41. This public confrontation was witnessed by multiple employees, including HR Analyst Bridgette Trawick, whose cubicle is next to Plaintiff and who was at her desk on Aug 17th, the day Plaintiff was being chased by BD Thomas, DM Malcolm, and Michelle Hagopian. She also confirmed seeing the 2 Managers and Secy following Plaintiff in her cubicle and Plaintiff repeatedly asking Thomas to stop as it was making her sick.

42. Yauri Nunez also witnessed the confrontation and confirmed hearing loud voices down the hallway and saw the 2 Managers and Secy following Plaintiff to her cubicle.

**Escalating Retaliation Following Protected Activity**

43. On August 21, 2023, Plaintiff filed a formal complaint with Internal Affairs regarding the harassment, discrimination, hostile work environment and unprofessional treatment. IA refused to transfer Plaintiff during investigation for employee protection.

44. On August 25, 2023, just 4 days after Plaintiff's IA complaint, she was officially reclassified to HR Systems Analyst, a position outside the bargaining unit, without union notification. The reclassification was "processed on 8/24/23, in oracle system effective 8/12/23, while IA investigation was open by me on 8/21/23."

45. On August 28, 2023, exactly 7 days after Plaintiff's IA complaint, Division Manager Malcolm and Bureau Director Karen Thomas filed a retaliatory complaint against Plaintiff alleging insubordination and neglect of duty.

46. The union attorney sent a letter to Sheriff Bradshaw on September 1, 2023, identifying these actions as clear and obvious retaliation and violations of PBSO General Orders.

47. The hostile work environment continued with almost daily petty nit-picking emails and systematic efforts to create documentation against Plaintiff.

# COUNT I

## DISCRIMINATION BASED ON RACE/NATIONAL ORIGIN
## IN VIOLATION OF TITLE VII

48. Plaintiff incorporates by reference paragraphs 1-47.

49. At all relevant times, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

50. Plaintiff is a member of a protected class based on her race and/or national origin.

51. Defendant subjected Plaintiff to adverse employment actions, including forced office relocation from a private office to a high-traffic cubicle, job reclassification to a lower position, denial of promotional opportunities, and hostile work environment.

52. Similarly situated employees outside of Plaintiff's protected class were treated more favorably. Specifically, managers of different ethnic backgrounds who started about 7 years ago as HR Specialists were promoted to Unit Manager and Division Manager positions with corner offices despite having less experience and tenure than Plaintiff.

53. The evidence establishes a systematic pattern of discriminatory treatment where employees of certain ethnic backgrounds received preferential treatment in office assignments and promotional opportunities, while Plaintiff and other employees of her ethnic background, including Sheri McCants-Hubers with 43 years of service, were relegated to cubicles and denied advancement.

54. Defendant's actions were motivated by Plaintiff's race and/or national origin and constitute unlawful discrimination in violation of Title VII.

55. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and damage to her career and professional reputation.

## COUNT II

## RETALIATION IN VIOLATION OF TITLE VII

56. Plaintiff incorporates by reference paragraphs 1-47.

57. Plaintiff engaged in protected activity by complaining about discriminatory treatment and hostile work environment, including her formal memo requesting position reevaluation on July 27, 2023.

58. Defendant was aware of Plaintiff's protected activity.

59. Following Plaintiff's protected activity, Defendant subjected her to adverse employment actions with exceptionally close temporal proximity. Just 15 days after her formal position evaluation request, management denied her request and accused her of performance issues for the first time in her 22+ year career on August 11, 2023. Six days later, on August 17, 2023, the hostile hallway confrontation occurred.

60. After Plaintiff filed her Internal Affairs complaint on August 21, 2023, Defendant reclassified her on August 25, 2023 (4 days later) and filed a retaliatory complaint against her on August 28, 2023 (7 days later).

61. The temporal proximity between Plaintiff's complaints and the adverse actions establishes a clear causal connection between the protected activity and the retaliation.

62. Defendant's retaliatory conduct violates Title VII and has caused Plaintiff to suffer damages.

## COUNT III

## DISCRIMINATION BASED ON RACE/NATIONAL ORIGIN
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

63. Plaintiff incorporates by reference paragraphs 1-47.

64. At all relevant times, Defendant was Plaintiff's employer within the meaning of the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq.

65. Plaintiff is a member of a protected class based on her race and/or national origin under the Florida Civil Rights Act.

66. Defendant subjected Plaintiff to unlawful employment practices, including discrimination in the terms, conditions, and privileges of employment based on her race and/or national origin.

67. Defendant's discriminatory conduct included forced office relocation from a private office to a high-traffic cubicle, job reclassification to a lower position, denial of promotional opportunities, and disparate treatment compared to similarly situated employees outside her protected class.

68. The evidence establishes a pattern where employees of certain ethnic backgrounds received preferential treatment in office assignments and promotional opportunities, while Plaintiff and other employees of her ethnic background faced systematic adverse treatment despite superior qualifications and tenure.

69. Defendant's actions constitute unlawful discrimination in violation of Fla. Stat. § 760.10.

70. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered damages including lost wages, benefits, emotional distress, and damage to her career and professional reputation.

## COUNT IV

### HOSTILE WORK ENVIRONMENT BASED ON RACE/NATIONAL ORIGIN IN VIOLATION OF TITLE VII

71. Plaintiff incorporates by reference paragraphs 1-47.

72. At all relevant times, Defendant was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

73. Plaintiff is a member of a protected class based on her race and/or national origin.

74. Defendant subjected Plaintiff to severe and pervasive harassment based on her race and/or national origin that altered the terms and conditions of her employment and created an abusive working environment.

75. The hostile work environment included but was not limited to: (a) forced relocation from a private office to a high-traffic cubicle while managers of different ethnic backgrounds retained corner offices; (b) systematic micromanagement including requiring daily work logs in spreadsheets and weekly productivity reports that were not required of other employees; (c) petty harassment through emails criticizing minor formatting issues; (d) impossible workload demands by consolidating three full-time positions into Plaintiff's role; and (e) public confrontation and humiliation where Bureau Director Thomas started yelling at Plaintiff and chased her down the office hallway in front of other employees.

76. The harassment was objectively severe and pervasive, as evidenced by the systematic pattern of discriminatory treatment affecting Plaintiff and other employees of her ethnic background, including QA Manager Sheri McCants-Hubers with almost 43 years with PBSO who was similarly "kicked out of our offices" and "humiliated and placed in cubicles."

77. The harassment was subjectively severe and pervasive from Plaintiff's perspective, creating a work environment that a reasonable person in Plaintiff's position would find hostile and abusive.

78. Defendant knew or should have known of the harassment but failed to take prompt and effective remedial action to stop it.

79. The hostile work environment was motivated by Plaintiff's race and/or national origin and constitutes unlawful discrimination in violation of Title VII.

80. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including emotional distress, mental anguish, and damage to her career and professional reputation.

## COUNT V

### RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

81. Plaintiff incorporates by reference paragraphs 1-47.

82. Plaintiff engaged in protected activity under the Florida Civil Rights Act by opposing unlawful employment practices and filing complaints regarding discriminatory treatment.

83. Defendant was aware of Plaintiff's protected activity under the Florida Civil Rights Act.

84. Following Plaintiff's protected activity, Defendant subjected her to adverse employment actions with clear temporal proximity, including job reclassification, performance allegations without foundation, hostile confrontations, and systematic harassment.

85. The temporal proximity between Plaintiff's complaints and the adverse actions establishes a causal connection between the protected activity and the retaliation.

86. Defendant's retaliatory conduct violates Fla. Stat. § 760.10 and has caused Plaintiff to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendant's actions violated Title VII, the Florida Civil Rights Act, and Plaintiff's constitutional rights;

B. Award Plaintiff compensatory damages for lost wages, benefits, and other economic losses;

C. Award Plaintiff compensatory damages for emotional distress, mental anguish, and other non-economic losses;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to applicable federal and state statutes;

E. Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

**DATED AUGUST 19, 2025**                                   **FOR PLAINTIFF:**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr.
FBN: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive
Weston, Fla. 33331
(954) 618-1041