UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 25-CV-81034-RS

LAVINIA SASU-PILTZ,

                    Plaintiff,

v.

RIC L. BRADSHAW, in his official
capacity as Sheriff of Palm Beach County,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS [ECF No. 8]

Defendant Ric L. Bradshaw, in his official capacity as Sheriff of Palm Beach County, moves to dismiss the Complaint of Plaintiff, Lavinia Sasu-Piltz. ECF Nos. 1, 8. Ms. Sasu Piltz filed a Response, ECF No. 11, and Sheriff Bradshaw filed a Reply. ECF No. 12. U.S. District Judge Rodney Smith referred the Motion to me for a report and recommendation. ECF No. 14. For the reasons discussed below, it is **RECOMMENDED** that Sheriff Bradshaw's Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

### BACKGROUND

The following allegations are taken from the Complaint and accepted as true for purposes of the Motion to Dismiss:

Ms. Sasu-Piltz began working for the Palm Beach County Sheriff's Office ("PBSO") as an HR Analyst on November 12, 2002. ECF No. 1 ¶6.[1] In 2006, Ms. Sasu-

---

[1] Unless otherwise specified, paragraph citations reference the Complaint, ECF No. 1.

Piltz was reclassified from HR Analyst to Unit Manager, received an 11 percent increase, and served as project lead on Oracle system implementation. ¶8. In 2009, Ms. Sasu-Piltz was transferred to the information technology department and reclassified to Functional Systems Specialist, where she served as Oracle System Administrator for 15 years. ¶9. In 2019, Ms. Sasu-Piltz was transferred back to Human Resources, where she maintained her Functional Systems Specialist position. ¶10. She has received numerous commendations and awards over her 22 years of service. ¶11.

In April 2021, Ms. Sasu-Piltz began reporting to division manager Diane Malcolm after her previous supervisor was promoted. ¶12. In January 2023, Ms. Sasu-Piltz was assigned additional full-time roles without prior discussion, training, or compensation adjustment. ¶13. These assignments created conflicts with Ms. Sasu-Piltz's primary duties for her Oracle System Administrator role, which served all of PBSO and required immediate attention to various issues. ¶14. On May 10, 2023, Ms. Sasu-Piltz was forced to relocate from her private office to a cubicle in a busy area of the office. ¶15. On July 13, 2023, Ms. Sasu-Piltz was informed of a proposed reclassification from Functional Systems Specialist to HR Systems Analyst. ¶31. From Ms. Sasu-Piltz's perspective, this reclassification improperly consolidated three full-time positions into one. ¶32. On July 27, 2023, Ms. Sasu-Piltz submitted a formal memo requesting re-evaluation of her position and noting that the reclassification did not reflect her expanded role, background, experience, or skills. ¶33. On August 11, 2023, PBSO management held a meeting where it denied her

request and accused her of performance and productivity issues without supporting documentation. ¶34. At the meeting, management presented Ms. Sasu-Piltz with an Employee Assistance Program form, which she refused to sign. ¶35.

On August 17, 2023, Ms. Sasu-Piltz was called to a meeting with Bureau Director Karen Thomas, Division Manager Malcolm, and Executive Secretary Michelle Hagopian. ¶36. Ms. Sasu-Piltz requested union representation, but her request was denied and she was told to sit down. ¶37. She refused to sit down or participate in the meeting without a union representative, who she attempted to call. ¶¶38–39. When Ms. Sasu-Piltz left the meeting room and walked toward her cubicle, the management personnel followed her, and Ms. Thomas entered the cubicle while the other individuals remained in the hallway. ¶40. Ms. Thomas yelled at Ms. Sasu-Piltz, "put paper" in her face, and asked her if she had sent it to someone. *Id.* Ms. Sasu-Piltz repeatedly asked Ms. Thomas to stop. *Id.*

Following the above incident, on August 21, 2023, Ms. Sasu-Piltz filed a complaint with Internal Affairs. ¶43. On August 25, 2023, Ms. Sasu-Piltz was reclassified to HR Systems Analyst, a position outside the bargaining unit, without union notification. ¶44. On August 28, 2023, Division Manager Malcolm and Bureau Director Thomas filed a complaint against Ms. Sasu-Piltz for insubordination and neglect of duty. ¶45.

The Complaint generally alleges that individuals at PBSO who have been promoted to managers do not have more professional experience, years of service, or certifications than Ms. Sasu-Piltz, but they are of a different ethnicity. ¶¶16–17. Ms.

Sasu-Piltz alleges that there are currently four managers in the HR department, all of whom began working seven years ago as HR specialists and have different ethnic backgrounds from Ms. Sasu-Piltz. *Id.* Another manager who shares Ms. Sasu-Piltz's ethnic background was also removed from her private office and placed in a cubicle. ¶¶18–19. Over the years, Ms. Sasu-Piltz did not receive promotions or merit increases, while others of different ethnic backgrounds were promoted or reclassified into higher positions with higher merit increases. ¶¶22–23. The Complaint does not identify Ms. Sasu-Piltz's ethnic background nor the ethnicities of the other employees.

Ms. Sasu-Piltz was required to maintain daily work logs and weekly productivity reports that other employees did not have to do, and she was "subjected to specific examples of petty harassment through emails criticizing minor formatting issues," such as a September 8, 2023, email from Malcolm noting that her work product was not using the same format that the unit had been using for years. ¶27. She also could not keep up with the workload because management created "impossible demands" by combining three positions into one. ¶28. Management asked her where the "Oracle Issues Log" was and then stating that the log needed to be updated as issues and changes occurred. ¶29. Ms. Sasu-Piltz interpreted these communications as a "set up." ¶30.

The Complaint asserts claims for discrimination based on race or national origin under Title VII (Count I), retaliation under Title VII (Count II), discrimination based on race or national origin under the Florida Civil Rights Act ("FCRA") (Count

III), hostile work environment under Title VII (Count IV), and retaliation under the FCRA (Count V). Sheriff Bradshaw moves to dismiss all counts of the Complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint states a claim for relief only if it "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party attacks the sufficiency of the pleading by filing a motion to dismiss under Rule 12(b)(6). In resolving that challenge, the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed that way, the factual allegations must be enough to raise a right to relief above the speculative level, "on the assumption that all the allegations in the claim are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007) (citations omitted).

While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption

5

that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550

U. S. at 555 (citations omitted).

"To survive a motion to dismiss a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,

556 U. S. at 678 (citing *Twombly*, 550 U.S. at 570). When evaluating a motion to

dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions can
> provide the framework of a complaint, they must be supported by factual
> allegations. When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U. S. at 679. Factually unsupported allegations based "on information and

belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols.*,

*Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory

allegations made upon information and belief are not entitled to a presumption of

truth, and allegations stated upon information and belief that do not contain any

factual support fail to meet the Twombly standard.").

"[T]he court may consider a document attached to a motion to dismiss without

converting the motion into one for summary judgment if the attached document is (1)

central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means

that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272,

1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

## DISCUSSION

### A.  Failure to Allege Exhaustion of Administrative Remedies

Sheriff Bradshaw first argues that the Complaint should be dismissed because it fails to allege that Ms. Sasu-Piltz exhausted her administrative remedies, as it does not plead that she filed a charge with the Equal Employment Opportunity Commission ("EEOC") or even that she complied with conditions precedent, and does not attach the charge. ECF No. 8 at 2–3. But Sheriff Bradshaw admits that Ms. Sasu-Piltz did file a charge of discrimination and attaches the charge to his Motion. ECF No. 8 at 3; ECF No. 8-1. Ms. Sasu-Piltz does not dispute the authenticity of the attachment; she uses it to advance her position. ECF No. 11 at 1–2. Accordingly, I conclude that exhaustion of administrative remedies is adequately pleaded.

### B.  Timeliness of Claims

Next, Sheriff Bradshaw argues that Ms. Sasu-Piltz's claims are untimely because she filed her charge too late. ECF No. 8 at 4. Under Title VII, when a plaintiff alleges an unlawful practice by a state or local agency, she must file an EEOC complaint within 300 days of the alleged violation. 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(a)(4)(ii); *Washington v. Fla.*, No. 18-CV-446, 2019 WL 4280064, at *4 (N.D. Fla. Aug. 23, 2019). "Only those claims filed within the 300 days prior to the filing of the EEOC charge are actionable." *Gomez v. Conviva Physician Grp., LLC*, No. 25-CV-14359, 2026 WL 466224, at *8 (S.D. Fla. Feb. 2, 2026) (citing *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002)). Under the FCRA, a plaintiff must file a charge within 365 days of the alleged violation. Fla. Stat. § 760.11(1); *Gomez,*

2026 WL 466224, at \*8. A claim is time-barred if it is not filed within these time limits. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Ms. Sasu-Piltz filed her EEOC charge July 25, 2024. ECF No. 8-1. Therefore, her Title VII claims must be based on conduct that occurred on or after September 29, 2023, and her FCRA claims must be based on conduct that occurred on or after July 26, 2023. The parties do not dispute these deadlines. ECF No. 8 at 4; ECF No. 11 at 5. Sheriff Bradshaw argues that Ms. Sasu-Piltz's discrimination claims (Counts I and III) are premised on three discrete acts that occurred before these deadlines: (1) she was forced to relocate to the cubicle on May 10, 2023; (2) she was reclassified to a lower position on July 13, 2023;[2] and (3) she was denied promotions. ECF No. 8 at 6–7. Ms. Sasu-Piltz responds that discriminatory or retaliatory acts occurred within the statutory periods, including the formal memo she submitted on July 27, 2023; management's discussion of her performance issues on August 11, 2023; the "confrontation" on August 17, 2023; the internal affairs complaint she submitted on August 21, 2023; the official reclassification of her position on August 25, 2023; and the complaint filed against her by the division manager on August 28, 2023. ECF No. 11 at 5.

All of these acts are untimely under Title VII, as each occurred prior to September 29, 2023. Regarding the FCRA, the allegations of conduct beginning July 27, 2023, are within the 365-day statutory window and therefore timely.

---

[2] The Complaint alleges that the reclassification was proposed on July 13, 2023, but did not officially occur until August 25, 2023. ECF No. 1 ¶¶31, 44.

8

Ms. Sasu-Piltz argues that the continuing violation doctrine applies to the above activities as well as her January 2023 assignment of additional full-time roles and her May 2023 relocation to a cubicle. ECF No. 11 at 6. For discrete acts, such as terminations and demotions, the continuing violation theory does not apply, and a plaintiff must file a charge within 300 days under Title VII or 365 days under the FCRA for a claim based on those acts. *See Perry v. S. Wine & Spirits of Am., Inc.*, No. 10-CV-2876, 2012 WL 12897391, at *3 (M.D. Fla. Mar. 5, 2012) ("For discrete acts, such as termination or a suspension, the act occurred on the day that it happened. A party therefore must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it.") (internal quotation marks and citations omitted); *Marquez v. Costco Wholesale Corp.*, 550 F. Supp. 3d 1256, 1273 (S.D. Fla. 2021) ("the courts in this Circuit have long recognized that both disciplinary suspensions and demotions are discrete acts, starting the clock on the 300-day charge-filing period."); *Wolf v. MWH Constructors, Inc.*, 34 F. Supp. 3d 1213, 1222 (M.D. Fla. 2014) ("The continuing violation doctrine does not apply to discrete acts of discrimination, such as a promotion denial."). Here, Ms. Sasu-Piltz references discrete acts she contends constitute discrimination or retaliation, such as the assignment of additional full-time roles in January 2023, her relocation to the cubicle, and other specific acts that occurred prior to September 29, 2023. ECF No. 11 at 6. Accordingly, the continuing violation doctrine does not apply, requiring dismissal of the Title VII claims (Counts I and II) as untimely. However, Ms. Sasu-Piltz's claims under the FCRA relating to conduct that occurred after July 26, 2023, are timely and not subject to dismissal on

9

this basis. Her FCRA claims regarding conduct prior to July 26, 2023, are untimely and not actionable.

### C. Exhaustion of Retaliation Claims

Sheriff Bradshaw next argues that Ms. Sasu-Piltz failed to exhaust her administrative remedies for her retaliation claims because her charge did not include retaliation and, therefore, that claim is outside the scope of the charge. ECF No. 8 at 8–9. Ms. Sasu-Piltz responds that the charge discusses retaliation and specifically mentions that management retaliated against her immediately after she submitted her internal affairs complaint. ECF No. 11 at 4.

Judicial claims are limited by the scope of the underlying administrative charge. *See Kim v. PGA Tour*, No. 23-CV-441, 2024 WL 280297, at *2 (M.D. Fla. Jan. 25, 2024) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018)). "[T]he scope of an EEOC complaint should not be strictly interpreted," and courts are "extremely reluctant to allow procedural technicalities to bar claims brought under [discrimination statutes]." *Batson*, 897 F.3d at 1328. "To determine whether a plaintiff has exhausted her administrative remedies . . . the 'proper inquiry' is whether the '[plaintiff's] complaint [is] like or related to, or grew out of, the allegations contained in [the] EEOC charge.'" *Id.* (quoting *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1278–80 (11th Cir. 2004)).

Here, Ms. Sasu-Piltz's EEOC charge includes sufficient references to retaliation to relate to her discrimination allegations, especially given the broad interpretation courts give the scope of these charges. She references conduct by

management in retaliation against protected activity, and instances of actions toward her that can reasonably be interpreted as retaliatory when viewed in the light most favorable to her. ECF No. 8-1. For example, the charge mentions that Ms. Sasu-Piltz filed a formal memo to management, a union grievance, and an internal affairs complaint, after which she was accused of insubordination and had an internal affairs complaint filed against her. ECF No. 8-1. Therefore, Ms. Sasu-Piltz has plausibly alleged that she exhausted her administrative remedies for her retaliation claims.

### D. Hostile Work Environment

Sheriff Bradshaw next argues that the Complaint fails to state a claim for hostile work environment because it alleges conduct that is not nearly severe or pervasive enough to meet the standard set by the Eleventh Circuit. ECF No. 8 at 11. To plausibly allege a hostile work environment claim, a plaintiff must plead (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on a protected characteristic, (4) the harassment was sufficiently severe and pervasive to alter the conditions of her employment, and (5) the employer was responsible for the hostile environment. *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774–75 (11th Cir. 2024). A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Title VII also

11

"prohibits the creation of a hostile work environment in retaliation for an employee's engagement in protected activity." *Tonkyro v. Sec., Dep't of Veteran Affairs*, 995 F.3d 828, 835–36 (11th Cir. 2021). The standards for judging hostility are intended to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* (quoting *Faragher v. City. of Boca Raton*, 524 U.S. 775, 788 (1998)).

To be actionable as a hostile work environment claim, the alleged conduct "must result in both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s] . . . to be abusive.'" *Miller*, 277 F.3d at 1276 (quoting *Harris*, 510 U.S. at 21–22). In evaluating the objective severity of the harassment, courts consider, among other factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* (citing *Allen v. Tyson Foods,* 121 F.3d 642, 647 (11th Cir. 1997)).

Ms. Sasu-Piltz argues that she plausibly alleges that she meets the "severe and pervasive" element based on (1) the August 17, 2023, incident where three supervisors followed her to her cubicle and Thomas yelled at her and "put[] papers into [her] face while continuing to yell; (2) her forced relocation to a cubicle; (3) her "impossible workload assignment"; (4) accusations of performance issues; and (5) "almost daily petty nit-picking emails" and "systemic efforts to 'humiliate [her] in front of [her] coworkers in meetings and emails.'" ECF No. 11 at 7. Sheriff Bradshaw contends that these examples constitute "nothing more than petty workplace

12

grievances that have nothing to do with her protected class and are neither severe nor pervasive." ECF No. 8 at 11.

The Complaint's allegations fall short of the standard for severity and pervasiveness. Ms. Sasu-Piltz describes a handful of occurrences such as her meeting with management, relocation from a private office to a cubicle, job reclassifications, performance reprimands, and increasing workloads; however, these constitute ordinary workplace events that, while unpleasant, do not objectively create a workplace so permeated with harassment to rise to the high level of severe and pervasive required in the Eleventh Circuit. *See, e.g., Brown v. Fla. Atl. Univ. Bd. Of Trustees*, 2016 WL 6236320 (S.D. Fla. Oct. 24, 2016) (supervisor entering plaintiff's office and standing close to her while yelling showed he was "abrasive" but not discriminatory); *Clark v. S. Broward Hosp. Dist.*, 601 F. App'x 886, 899–900 (11th Cir. 2015) (supervisor yelling at female employee did not show sex-based animus). Similarly, Ms. Sasu-Piltz's experiences with managers indicate hostility but nothing that relates to her race or ethnicity, and nothing that reaches the standard for a hostile work environment.

Further, Title VII centers on discrimination and harassment specifically related to discrimination. "Title VII does not prohibit . . . harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (quoting *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301 (11th Cir. 2007)). "It is a bedrock

principle that not all objectionable conduct or language amounts to discrimination under Title VII." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (overruled on other grounds by *Babb v. Wilkie*, 589 U.S. 399 (2020)). "[O]nly conduct that is *based on* a protected category . . . may be considered in a hostile work environment analysis." *Id.* (emphasis in original).

The Complaint does not allege whether Ms. Sasu-Piltz is a member of a protected group and which protected characteristic the harassment allegedly targeted. The Complaint makes several vague allegations that individuals who were of a different ethnicity from Ms. Sasu-Piltz were treated more favorably, but the Complaint never identifies a protected characteristic or group, as required to plausibly allege a hostile work environment claim. *See Glover v. Lockheed Martin Corp.*, No. 19-CV-198, 2020 WL 13656062, at \*6 (N.D. Ga. July 23, 2020) (plaintiff failed to allege a hostile work environment when he did not allege facts showing he was a member of a protected class and failed to allege facts "indicating his or any other employee's national origin"); *Concannon v. Int'l Cruise & Excursions, Inc.*, No. 18-CV-2093, 2019 WL 4395258, at \*2 (M.D. Fla. May 28, 2019) (Plaintiff did not plausibly allege discrimination when he did "not identify what protected class he is referring to or how he was discriminated against based on such protected characteristic."). Nor does the Complaint provide any specific allegations tying the alleged conduct to any protected characteristic Ms. Sasu-Piltz may have. She merely complains about the actions taken against her and alleges that some people with less experience and different characteristics received promotions or higher pay. There are

14

no facts alleged to connect any workplace unpleasantries with Ms. Sasu-Piltz's (unidentified) protected status. *See Trask*, 822 F.3d at 1196 ("voluminous incidents" of hostility were not actionable when there were no factual allegations that they related to the plaintiff's protected status).

## CONCLUSION

The Court concludes that Ms. Sasu-Piltz's claims for discrimination and retaliation under Title VII should be dismissed with prejudice as untimely. Her claims under the FCRA survive, as the allegations of conduct after July 26, 2023, are timely, she adequately alleged exhaustion of administrative remedies, and Sheriff Bradshaw did not seek dismissal of the FCRA claims on other grounds. The hostile work environment claim should be dismissed with leave to amend, as it is unclear whether Ms. Sasu-Piltz can allege sufficient facts to state a claim. Ms. Sasu-Piltz is reminded that, should she fail to allege a plausible federal claim, the Court will lack subject matter jurisdiction.

## RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that Defendant's Motion to Dismiss Complaint be **GRANTED IN PART AND DENIED IN PART** as follows:

1. The claims for discrimination and retaliation under Title VII (Counts I-II) be **DISMISSED WITH PREJUDICE** as untimely.

2. The Motion be **DENIED** as to Ms. Sasu-Piltz's claims under the FCRA (Counts III, V).

3. The claim for hostile work environment under Title VII (Count IV) be

**DISMISSED WITH LEAVE TO AMEND**.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodney Smith, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE (5) DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 15th day of June, 2026.

BRUCE E. REINHART
United States Magistrate Judge